**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Charles Wesley Clark, III, | No. CV-22-00256-PHX-JZB |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Charles Wesley Clark, III, seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("Commissioner"), denying his application for disability benefits under Title II of the Social Security Act. (Doc. 1; Doc. 19.) The Court finds the Administrative Law Judge ("ALJ") improperly discredited Plaintiff's symptom testimony. Accordingly, the decision of the ALJ is reversed and remanded.

**I.     Background.**

On January 27, 2020, Plaintiff completed an application for disability benefits alleging he suffered a disability beginning July 31, 2017. (AR 164.) Plaintiff's application was denied on April 9, 2020, (AR 112-16), and upon reconsideration on August 11, 2020 (AR 118-22.) Plaintiff requested a hearing with an ALJ, (AR 123) which was held on February 23, 2021 (AR 36). In a written decision dated August 24, 2021, the ALJ found Plaintiff was not disabled. (AR 14-31.) Plaintiff filed a request for review, which the Appeals Council denied and the ALJ's decision became final. (AR 1-3.)

**II.     Legal Standard.**

The Court reviews only issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may affirm, modify, or reverse the decision of the Commissioner, with or without remanding the cause for a rehearing. 42 U.S.C. §§ 405(g), 1383(c). The Court may set aside the decision only when it is not supported by "substantial evidence" or is based on legal error. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Trevizo*, 871 F.3d at 674-75. The Court reviews the entire record and may not affirm "simply by isolating a specific quantum of supporting evidence." *Id.* at 675. The Court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [the ALJ] did not rely." *Id.*

**III.    The ALJ's Five-Step Evaluation Process.**

To be entitled to disability insurance benefits, an individual must be insured for disability insurance benefits, have not attained retirement age, have filed an application for benefits and be disabled as defined in the Social Security Act. 42 U.S.C. § 423(a)(1)(A)-(E). To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C. F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe"

medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, before proceeding to step four, the ALJ assesses the claimant's residual functional capacity ("RFC"). § 404.1520(a)(4). At step four, the ALJ assesses whether the claimant is still capable of performing past relevant work based on the claimant's RFC. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

In a written decision dated August 24, 2021, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2022, and that he has not engaged in substantial gainful employment since the alleged onset date of July 31, 2017. (AR 20.) At step two, the ALJ found that Plaintiff has the following severe impairments: "degenerative disc disease of the cervical and lumbar spine with lumbar and cervical radiculopathy, degenerative joint disease of the knees status post total knee replacement surgery of the left knee in November 2018 and arthroscopic surgery of the right knee in July 2019, degenerative joint disease of the shoulders status post arthroscopic surgery of the right shoulder in August 2018 and June 2019, migraine disorder and depression." (*Id.*) At step three, the ALJ determined that claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404. (*Id.*) The ALJ found that Plaintiff has the RFC to perform:

> light work as defined in 20 CFR 404.1567(b) except he is capable of lifting, carrying, pushing and/or pulling 20 pounds occasionally and ten pounds or less frequently. He is able to sit, stand and/or walk for six hours out of an eight-hour workday. While he is precluded from climbing ladders, ropes, or scaffolds, he remains capable of frequently balancing as well as performing all other postural activities on an occasional basis. He is limited to reaching

- 3 -

>overhead with both extremities on an occasional basis but cannot perform any overhead lifting with either extremity. He cannot work at unprotected heights, around moving machinery or other such hazards. He is able to understand, remember, and carry out simple, routine tasks for up to two hours at a time. He cannot perform any fast-paced production or assembly line type work. He is able to have occasional interaction with the public.

(AR 22.) At step four, the ALJ then found Plaintiff is unable to perform any past relevant work based on his RFC. (AR 29.)

At step five, the ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (AR 30.) Thus, the ALJ concluded that Plaintiff is not disabled. (AR 31.)

**IV.   Analysis.**

Plaintiff argues the ALJ erred by (1) discrediting Plaintiff's symptom testimony without providing clear, convincing reasons supported by the record, and (2) assigning partial weight to the prior administrative assessments without support from the record. (Doc. 19 at 1-2.)

**A.   Plaintiff's Symptom Testimony.**

When evaluating symptom testimony, the ALJ must assess whether the claimant has produced "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged[.]" *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (quotations omitted). "The claimant[ ] need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quotations omitted). If the claimant provides evidence of such impairment, "and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (quotations omitted).

The ALJ may consider "daily activities involving skills that could be transferred to

the workplace[,]" the "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment[,]" and other "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346. An ALJ may not discredit symptom testimony solely on the basis the reported symptoms lack support from objective evidence. *Id*. at 346-47. Doing so would "would render meaningless the requirement that an adjudicator must consider all relevant evidence[,]" including symptom testimony. *Id*. (quotations omitted).

The ALJ found Plaintiff was not disabled under the Social Security Act. While the impairments could reasonably cause the alleged symptoms, the ALJ found Plaintiff's testimony about the intensity, persistence and limiting effects of those symptoms was not consistent with the medical evidence and other record evidence. (AR 23-27.) Specifically, the ALJ found the medical record showed (1) Plaintiff's migraines showed improvement, (2) that his depression was well managed with medication and limited treatment, that (3) Plaintiff's physical impairments were well managed with medication, in-office treatment, and surgeries, and (4) Plaintiff's reported daily activities show he was able to function adequately despite his pain complaints. (AR 28.)

### 1. Migraines.

The ALJ concluded Plaintiff's "headaches improved with Botox injections such that he went from 30 migraines per month to two per week." (AR 28.) This finding is inconsistent with the ALJ's conclusion that Plaintiff is not disabled. The vocational expert testified that three absences per month due to headaches would render a person unable to perform any work. (AR 70.) The ALJ relied on the vocational expert testimony in making the determination of Plaintiff's residual functional capacity. The ALJ did not explain the discrepancy between finding both that Plaintiff suffered eight migraines per month and simultaneously would not miss three days per month of work due to migraines. Indeed, the ALJ did not find that Plaintiff's twice-weekly migraines were of such little severity that Plaintiff could work through them; nor would the record support such a finding.

The record shows that as of February 2021, Plaintiff reported he suffered two migraine episodes per week lasting more than a day. (AR 943.) Plaintiff consistently

reported that such migraines were a ten-out-of-ten severity. (AR 943, 947-48, 885, 880, 875, 547). As it stands, the ALJ's finding that Plaintiff suffered two migraines per week is inconsistent with the ALJ's finding that Plaintiff is not disabled. Moreover, although the ALJ correctly noted that Plaintiff's migraines were improving, from 30 migraines per week to two per week (AR 885, 943), an improvement does not necessarily mean a condition is not disabling. *See Garrison v. Colvin*, 759 F.3d 995, 1017 n.23 (9th Cir. 2014) ("There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce").

### 2. Limited Treatment of Depression.

The ALJ concluded Plaintiff's major depressive disorder was well managed with limited treatment. (AR 28.) This rationale is not supported by the record because the ALJ failed to cite several additional treatment records indicating Plaintiff was treated for periodic recurrent moderate-to-severe depressive episodes, and the record overall does not indicate Plaintiff's mood disorder was well managed.

The ALJ only cited records of treatment from January 2020, May 2020, and July 2020. (AR 27.) The ALJ failed to cite records of four additional episodes of major depressive disorder. Specifically, in August 2019, Plaintiff suffered an episode of major depressive disorder, and then suffered a recurrent, moderate episode a few days later. (AR 818.) In October 2019, he suffered another episode, followed by recurrent moderate episodes in November 2019 and January 2020. (*Id.*) While the ALJ correctly noted that in January 2020, Plaintiff indicated his medication was helping, by May 2020, Plaintiff suffered a severe recurrent episode of major depressive disorder and visited his mental healthcare provider reporting his depression and insomnia were worsening. (AR 901, 911.) The provider noted "erratic sleep, low energy and loss [of] interest in doing things." (AR 911.) In July 2020, Plaintiff experienced another depressive episode and reported sleeping only two hours per night. (AR 900, 903.)

In addition, the ALJ's assessment that records indicate Plaintiff presented with "normal mental status evaluation except for having a mild to moderately depressed mood"

is unsupported. (AR 27.) The provider summary dated January 2020 noted Plaintiff presented with lack of motivation, lack of pleasure, fatigue or loss of energy nearly every day, insomnia, and anger and irritability. (AR 825.) The provider specified that on a good night, Plaintiff got six hours of sleep and on a bad night, only three hours of sleep because of the depression. (AR 825.) There is no evidence in the record that Plaintiff's disorder was well managed. Although the ALJ found Plaintiff's treatment was limited, it is unclear what additional treatment the ALJ would consider to be consistent with disabling periodic depressive episodes.

### 3.     Improvement with medication, in-office treatment, and surgery.

The ALJ determined Plaintiff's physical impairments were well managed with in-office treatment, medication and surgery. (AR 28.) A review of the record shows this rationale is not supported with respect to Plaintiff's several physical impairments, and thus the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's testimony.

While the record supports that Plaintiff's right shoulder and knees demonstrated improvement after surgery, (AR 698, 750, 930-34, 690, 734 372-82, 686-89) other records indicate that Plaintiff's left shoulder, cervical spine and lumbar spine were not improved or worsening during that time. (*See* AR 612-14, 682, 818, 823-24, 891-902, 930-38, 1052-58.) A January 2020 MRI of Plaintiff's left shoulder indicated mild to moderate tendinosis, mild acromioclavicular degenerative change, and low-grade tearing that was new or increased since the prior exam, as well as a ganglion cyst, small join effusion, and low-grade tearing in the bicep. (AR 614.) In February 2020, Plaintiff reported extreme pain in the left shoulder, and he received a cortisone injection. (AR 682.) He continued with physical therapy on the left shoulder through mid-2020 without demonstrated improvement and reported pain again in February 2021. (AR 900-02.) There is no evidence that Plaintiff's left shoulder pain was well managed with the medication and in-office treatment, and the MRI scans indicate physical deterioration. (AR 614.)

Meanwhile, records of Plaintiff's cervical and lumbar spine impairments did not show sustained improvement. In the months that followed Plaintiff's knee and right

shoulder surgery recovery, Plaintiff was consistently treated for significant back and neck pain. (AR 818, 823-24.) In January 2020, an MRI scan showed lateral recess stenosis at L4-5 and L1-2 and disc bulges at L5-S1. (AR 612.) Plaintiff reported neck and back pain again through mid-2020, and in May 2020, he received cervical and lumbar acupuncture with no relief. (AR 891-96.) He received additional x-rays and MRI scans to both the neck and back in October and November 2020. (AR 930-38.) The back scans showed similar disc bulges, severe L1-2 space narrowing, and mild facet arthropathy at other points in the lumbar spine. (AR 930-32.) The neck scans showed degenerative disc disease, with spondylosis and "sever left and moderate right foraminal stenosis" at the C4-5 level. (AR 938.) Finally, in February 2021, after presenting with mild back muscle spasms, tenderness, limitations in his range of motion, and cervical pain, his medication was adjusted. (AR 1054, 1058.) The record thus shows Plaintiff's spinal impairments did not show sustained improvement and the relief from neck and back injections and radiofrequency ablations were only temporary.

Moreover, while there are few knee and right shoulder treatment records after Plaintiff's surgeries, during that period Plaintiff, in addition to pain in the left shoulder and spine, suffered severe, recurrent depressive episodes in May and July 2020 (AR 901-03, 911) and severe migraines ranging from once daily to twice weekly (AR 875-943).

The ALJ cannot isolate instances of improvement from the record if they are not consistent with the overall record. *See* 20 C.F.R. § 404.1523(c) ("If we do find a medically severe combination of impairments, we will consider the combined impact of the impairments throughout the disability determination process."); *see also Garrison*, 759 F.3d at 1017; *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (stating the Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."); *see also Attmore v. Colvin*, 827 F.3d 872, 877 ("An ALJ cannot simply 'pick out a few isolated instances of improvement over a period of months or years' but must interpret 'reports of improvement ... with an understanding of the patient's overall well-being and the nature of her symptoms.'"); *Ghanim v. Colvin*, 763

F.3d 1154, 1162 (9th Cir. 2014) (stating the ALJ's determination must be founded on "a holistic review of the record"). Substantial evidence does not support the ALJ's conclusion that Plaintiff's physical impairments were well-managed and the ALJ thus did not provide clear, convincing reasons for an adverse credibility finding on that basis.

### 4. Daily Activities.

The ALJ, in making an adverse credibility finding, may reasonably rely on Plaintiff's reports of daily activities which indicate capacities that are transferable to a work setting. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (citing *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Daily activities may also be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *Id.* (citing *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009)).

The ALJ concluded Plaintiff was able to "prepare simple meals, do laundry, make his bed, drive, go out alone, go grocery shopping, ride his motorcycle, go to friend's houses, manage his finances and spend time reading as well as watching television . . . he did not need reminders to take his medication or take care of his personal hygiene . . . in early 20202, he reported that he was taking accounting classes and doing well in school . . . His therapist also stated that he was able to volunteer with a little league." (AR 28.)

While the ALJ cited Plaintiff's ability to ride a motorcycle, the only reference in the record to such activity is in Plaintiff's function report, where he stated only that he cannot ride his motorcycle as much as he would like to because of his pain. (AR 207.) Similarly, the ALJ cited Plaintiff's mental health provider's note that Plaintiff coached youth baseball, but the provider specifically stated, "[h]e states that he has volunteered with a little league 'as a way of forcing me out of the house and coping with depression, because someone else is depending on me to show up, but sometimes I am in so much pain and [too] depressed to get out of the house.'" (AR 1068.) The record does not support that Plaintiff was able to ride a motorcycle or coach a youth baseball team with any regularity to provide a clear and

convincing reason for discrediting his testimony.

As for the reports that Plaintiff was able to shop for groceries, take medication without reminder, go out alone, and take an accounting class, without evidence as to the duration or physical demands of such class, a claimant need not "vegetate in a dark room" in order to be eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). Substantial evidence does not support the ALJ's finding that Plaintiff's daily activities contradicted his reports of disabling pain and depression.[1]

### B.     Remand for Calculation and Award of Benefits.

"The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). When an ALJ erred in denying benefits, "the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). However, under rare circumstances, the Court may remand for an immediate calculation of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1102 (9th Cir. 2014).

The three-part analysis for determining whether to remand for calculation of benefits is known as the "credit-as-true" rule. *Leon*, 880 F.3d 1041 at 1045 (citing *Garrison*, 759 F.3d at 1019). To invoke the rule, first, the ALJ must have failed to provide legally sufficient reasons for rejecting evidence. *Id.* (citing *Garrison*, 759 F.3d at 1020). Second, the Court determines "whether there are outstanding issues that must be resolved before a disability determination can be made . . . and whether further administrative proceedings would be useful." *Id.* (quoting *Treichler*, 775 F.3d at 1101). Third, if the above elements are met, the Court may find the relevant testimony credible for the purposes of determining whether there are any remaining doubts as to disability. *Id.* (citing *Treichler*, 775 F.3d at 1101).

As explained above, the ALJ failed to provide legally sufficient reasons for

---

[1] Because the Court reverses and remands on the issue of Plaintiff's testimony, the Court need not address Plaintiff's additional argument related to the ALJ's assignment of partial weight to the assessments of non-examining state agency consultants. (*See* Doc. 19 at 21-23).

rejecting Plaintiff's symptom testimony. The ALJ determined Plaintiff's major depressive disorder was well managed yet failed to cite medical records of several additional depressive episodes. Similarly, the ALJ concluded Plaintiff's physical impairments showed improvement and were well managed, a conclusion which was not supported when assessing the record as a whole and considering all of Plaintiff's impairments. The record also does not support the ALJ's conclusion that Plaintiff's daily activities contradicted his symptom testimony. Significantly, the ALJ also found Plaintiff suffered eight migraines per month and yet concluded Plaintiff was not disabled, despite the vocational expert's testimony that three migraines per month would preclude a claimant from performing any work. Based on the evidence of Plaintiff's migraines, in combination with his physical and mental health impairments, the record is fully developed to conclude that Plaintiff is disabled as defined by the Social Security Act and no further hearing is necessary to make that determination. Considering the record as a whole, there is no doubt as to Plaintiff's disability. The record is clear that "no useful purpose would be served by further administrative proceedings." *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). A remand for further proceedings would "only delay the receipt of benefits." *Id*. Accordingly, the Court remands to the ALJ for calculation and award of benefits.

**V.    Conclusion.**

Plaintiff raises materially harmful error on the part of the ALJ, and, for the reasons set forth above, the Court reverses the SSA's decision and remands for calculation and award of benefits.

**IT IS THEREFORE ORDERED** reversing the August 24, 2021, decision of the Administrative Law Judge, (AR 14-31), as upheld by the Appeals Council, (AR 1-3). The Court remands this matter for calculation and award of benefits.

Dated this 30th Day of March, 2023

Honorable John Z. Boyle
United States Magistrate Judge